**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Winter, | No. CV-21-01828-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Sarah Jane Winter's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 14, Def. Br.), and Plaintiff's Reply (Doc. 17, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 17–32) as upheld by the Appeals Council (R. at 1–5).

**I.     BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on November 7, 2016, for a period of disability beginning on December 11, 2015. (R. at 166.) Her claim was denied initially on April 4, 2017, and upon reconsideration on August 3, 2017. (R. at 166.) On May 21, 2019, Plaintiff appeared before the ALJ for a hearing regarding her claim. (R. at 166.) On September 16, 2019, the ALJ denied Plaintiff's claim. (R. at 166–78.)

On July 1, 2020, the Appeals Council granted Plaintiff's Request for Review of the ALJ's decision and remanded the case to the ALJ for resolution of several issues. (R. at 188–89.) Plaintiff appeared for a second hearing before the ALJ on February 10, 2021. (R. at 17.) On March 31, 2021, the ALJ again denied Plaintiff's claim (R. at 17–32), and on September 16, 2021, the Appeals Council denied Plaintiff's second Request for Review of the ALJ's decision (R. at 1–5).

The Court has reviewed the record and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of a neurological disorder, history of migraine headaches, post-traumatic stress disorder, degenerative disc disease, and hypothyroidism. (R. at 20.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 32.) In so doing, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 21.) The ALJ found that Plaintiff has the Residual Functional Capacity (RFC) to perform light work with some physical and environmental limitations. (R. at 23.) The ALJ concluded that Plaintiff cannot perform past relevant work as an executive assistant, training analyst, or property appraiser, but could perform light work such as office helper or sedentary work such as account clerk, such that Plaintiff is not under a disability as defined in the Social Security Act. (R. at 30–31.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises four arguments for the Court's consideration, namely, (1) the ALJ's reasons for discounting the opinions of Plaintiff's treating and examining physicians were neither sufficient nor supported by substantial evidence in the record; (2) the ALJ erred in evaluating Plaintiff's symptom testimony; (3) the ALJ erred in rejecting lay witness testimony without germane reasons to do so; and (4) the ALJ erred in relying on vocational expert testimony given in response to an incomplete hypothetical question. (Pl. Br. at 1–2.)

The Court's resolution of this case begins and ends with Plaintiff's first contention, that the ALJ's reasons for discounting the opinions of Plaintiff's treating and examining physicians were inadequate and unsupported by substantial evidence in the record. (Pl. Br. at 8–17.) In evaluating applications filed before March 27, 2017, as in Plaintiff's case, "[t]he ALJ must consider all medical opinion evidence," but there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ may only reject a treating or examining physician's contradicted medical opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Kelly Milton, M.D., a neurologist, began treating Plaintiff in January 2016 for cognitive deficit, headaches, and seizure-like episodes including shaking at night. (R. at 1700.) An MRI revealed an arachnoid cyst on Plaintiff's brain, which may have contributed to Plaintiff's seizures, though different symptoms led to the opinion that the cyst was not

the root cause of Plaintiff's episodes. (R. at 1700.) Medication for migraines and seizures helped reduce the frequency of Plaintiff's episodes but did not eliminate them entirely. (R. at 1700.)

In October 2018, based on her examination and treatment of Plaintiff over the course of almost two years, Dr. Milton opined that Plaintiff had extreme limitations in the ability "to understand and remember detailed instructions" and marked limitations in numerous areas, including the ability "to remember locations and work-like procedures," "understand and remember very short and [simple] instructions," "carry out very short and simple instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "work in coordination with or proximity to others without being distracted by them," and "make simple work-related decisions." (R. at 1698.)

In December 2018, Dr. Milton found it difficult to "definitively characterize" patient's symptoms, opining that they could be "migraine aura," seizures, or psychologically-based episodes potentially grounded in past severe trauma, but she noted that Plaintiff was "hampered by headaches and cognitive decline." (R. at 1700.) Dr. Milton observed that, in the exam room, Plaintiff "has stuttering speech that seems to wax and wane," which further fueled Dr. Milton's opinion that the symptoms might be caused by psychological as well as neurological factors. (R. at 1700.) Dr. Milton concluded, "We can pontificate forever on what might be causing her ailments. Regardless of the cause, we need to determine what she can, actually, do." (R. at 1700.)

The ALJ assigned Dr. Milton's opinions "little weight," because Dr. Milton relied on Plaintiff's subjective reports of her symptoms and stated "it was nearly impossible to prove whether or not the claimant could follow complex instructions during a regular office visit," which the ALJ stated implied that "Dr. Milton does not believe there is any significant limitation in the claimant's ability to perform simple tasks." (R. at 28.) Not only are the ALJ's conclusions unsupported by substantial evidence in the record, but they are contrary to it. Based on her course of examination and treatment of Plaintiff, Dr. Milton explicitly stated that Plaintiff has marked limitations in remembering or carrying out simple

instructions. There was no need for the ALJ to infer what Dr. Milton meant about Plaintiff's ability to perform simple tasks when Dr. Milton explicitly opined on that ability based on her treatment of Plaintiff. And it is illogical to disregard Plaintiff's lack of capacity to perform simple tasks based on Dr. Milton's statement that assessing Plaintiff's capacity to perform complex tasks in an examination room was difficult.

The Court also finds the ALJ's statement that Dr. Milton's opinions were based solely on Plaintiff's subjective reports (R. at 28) to be unsupported by substantial evidence. As support, the ALJ stated that Dr. Milton's opinions were "inconsistent with her own treatment notes" (R. at 28), but the ALJ failed to demonstrate how. *See Magallanes,* 881 F.2d at 751 (9th Cir. 1989) (noting "[t]he ALJ can meet [her] burden by setting out a detailed and through summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings"); *Padilla v. Comm'r. of Soc. Sec.*, No. CV-17-02737-PHX-BSB, 2018 WL 4770807 at *6 (D. Ariz. Oct. 3, 2018) (finding that "[e]ven if the record includes limited objective evidence and treatment evidence, the ALJ still failed to connect that evidence, or lack of evidence, to her rejection of any particular limitation that [the treating physician] identified"). Indeed, on a review of the record, the Court finds Dr. Milton's treatment notes to be consistent with her assessment of Plaintiff's psychological capacity.[1] And it is beyond dispute that psychological assessments by their very nature are based in part on subjective reports of symptoms.

Further, the ALJ noted that Plaintiff's symptoms "improved with medication" and that she had "high average intellectual functioning." (R. at 28.) These reasons are likewise unpersuasive. Dr. Milton accounted for Plaintiff's symptoms while on medication in assessing Plaintiff's capacity, and while the record shows medication helped reduce the frequency of Plaintiff's episodes, it did not resolve all of her psychological or cognitive limitations. Likewise, the fact that Plaintiff is intelligent does not negate the record of limitations she suffered on account of neurological/psychological disorders. Accordingly,

---

[1] The ALJ also based her disregard of Dr. Milton's assessment on Dr. Milton's "refusal" to do a physical capacity assessment of Plaintiff. (R. at 28.) But this is entirely expected, as Dr. Milton is a neurologist by specialty and was treating Plaintiff for "cognitive deficit, headaches, and seizure-like episodes."

the Court agrees with Plaintiff that the ALJ's reasons for assigning "little weight" to Dr. Milton's assessments of Plaintiff were neither legitimate nor supported by substantial evidence, and the ALJ's error in accounting for Dr. Milton's opinions was material to the formulation of Plaintiff's RFC and the ultimate disability determination.

On Dr. Milton's recommendation that Plaintiff receive further assessment and testing with "fresh eyes" (R. at 1700), Dr. Brent Geary, a psychologist, examined Plaintiff on April 22, 2019. (R. at 1746.) Dr. Geary opined that Plaintiff has certain symptoms that are "neurological in nature, such as seizure disorder, daily headaches, severe migraine episodes, and visual trouble. The underlying neurological dysfunction also clearly contributes to cognitive impairment." (R. at 1746.) In testing, Dr. Geary found Plaintiff's memory "slips precipitously . . . after short delays of 15–25 minutes." (R. at 1746–47.) He also noted that Plaintiff's "psychomotor speed is notably weaker than other intellectual faculties and information processing is impaired." (R. at 1747.) After his examination, Dr. Geary opined that Plaintiff had moderately severe limitations in her ability to "understand, remember, and carry out detailed instructions," "respond to customary work pressures," and "complete a normal workday/week without interruptions from psychologically based symptoms and to perform at a consistent basis without an unreasonable length and number of rest periods." (R. at 1748–50.) Likewise, Dr. Geary concluded Plaintiff had moderate limitations in her ability to "maintain attention and concentration for extended periods" and other work-related cognitive functions. (R. at 1748–50.)

The ALJ assigned "little weight" to Dr. Geary's assessment, finding them "inconsistent with the record as a whole" without further explanation or detail. (R. at 29.) This, again, was error. *See Magallanes*, 881 F.2d at 751; *Padilla*, 2018 WL 4770807 at \*6. And the Court's review of the record shows that Dr. Geary's opinion was consistent with the records of Plaintiff's treatment. (*E.g.*, R. at 1761–62.) The ALJ further took issue with what she characterized as the inconsistency between these assessments of Plaintiff's cognitive abilities and Plaintiff's international travel, but the record shows that Plaintiff

was accompanied on all her travel and did not operate independently. (R. at 64–67.) In sum, the Court finds that the ALJ also materially erred in weighing Dr. Geary's examination and evaluation of Plaintiff's cognitive capacity by failing to provide legitimate reasons for discounting it or supporting any reason with substantial evidence in the record.

In the absence of any specific and legitimate reasons to discount the opinions of Dr. Milton and Dr. Geary, the Court must credit them as a matter of law. *See Lester*, 81 F.3d at 834. And in addressing the hypotheticals incorporating the limitations put forth by these doctors, the vocational expert testified that Plaintiff could not work in the national economy. (R. at 114–15.)

Because this error is dispositive, the Court need not examine Plaintiff's other arguments. Briefly, the Court notes that it would also find that the ALJ erred by failing to give specific, clear and convincing reasons for discounting Plaintiff's symptom testimony, for many of the same reasons as the Court discussed above.

The "credit–as–true" standard, if applied, results in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). It applies if each part of a three–part standard is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*.

The credit–as–true rule applies in this case. First, the record in this case was fully and extensively developed, such that further proceedings would be unproductive. Next, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Milton and Dr. Geary. The ALJ also failed to properly weigh the Plaintiff's symptom testimony. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find that Plaintiff is disabled. The ALJ improperly discredited two treating and examining physicians' opinions that Plaintiff has

marked to extreme limitations in several areas of cognitive functioning. The ALJ also discredited Plaintiff's testimony regarding the severity of her symptoms and their effects on her abilities to sustain work. If this evidence is properly credited, then considering the whole record, including the testimony of the Vocational Expert, the ALJ would be required to find that Plaintiff is disabled. (R. at 114–15.)

Therefore, it is unnecessary to remand for further administrative proceedings, and the Court will remand for a calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the March 31, 2021 decision of the Administrative Law Judge, (R. at 17–32), as upheld by the Appeals Council on September 16, 2021 (R. at 1–5).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 30th day of March, 2023.

Honorable John J. Tuchi
United States District Judge